Duc DUONG; Kelly Ann Duong; and Meggie Ann Duong, by and through her next friend, Duc Duong, Plaintiffs–Appellants,

v.

The COUNTY OF ARAPAHOE; The Board of County Commissioners of Arapahoe County; Patrick Sullivan, in his official capacity as Sheriff of Arapahoe County; James D. Thomas, in his official capacity as State Court Administrator; the Honorable Joyce S. Steinhardt, in her official capacity as Chief Judge of the Eighteenth Judicial District; Colorado State Judicial Department; The State of Colorado; and Chanh Van Duong, Defendants–Appellees.

No. 90CA1166.

Colorado Court of Appeals,
Div. IV.

Feb. 27, 1992.

As Modified on Denial of Rehearing
April 16, 1992.

Certiorari Denied Oct. 13, 1992.

Don & Hiller, P.C., Shelley B. Don, Watson W. Galleher, Denver, for plaintiffs-appellants.

Peter Lawrence Vana, County Atty., Darrel L. Matteson, Asst. County Atty., Littleton, for defendants-appellees County of Arapahoe, Bd. of County Com'rs of Arapahoe County and Patrick Sullivan.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Arnold, Deputy Atty. Gen., Law, Knous, Keithley, John M. Law, Denver, for defendants-appellees James D. Thomas, Honorable Joyce S. Steinhardt, Colorado State Judicial Dept. and State of Colorado.

Opinion by Judge MARQUEZ.

Following the homicide of their mother, plaintiffs, Duc Duong, Kelly Ann Duong, and Meggie Ann Duong, brought this action claiming damages under 42 U.S.C. § 1983 (1988), the Colorado Constitution and state tort law. They appeal the summary judgment dismissing their claims that was entered in favor of defendants, the County of Arapahoe, the Board of County Commissioners of Arapahoe County, Patrick Sullivan, in his official capacity as Sheriff of Arapahoe County (the county defendants), and James D. Thomas, in his official capacity as State Court Administra-

tor, Judge Joyce S. Steinhardt, in her official capacity as Chief Judge of the Eighteenth Judicial District, the Colorado State Judicial Department, and the State of Colorado (the state defendants). We affirm.

In January 1988, Chanh Van Duong fatally shot his estranged wife as she stood in a hallway of the Arapahoe County Justice Center. The incident occurred outside the courtroom where a hearing on a dissolution proceeding matter between the two was scheduled. Plaintiff Kelly Ann Duong was present when her mother was killed.

Decedent filed her dissolution of marriage action in September 1986. At a hearing in August 1987, Chanh Van Duong confessed that he had on several occasions threatened to kill the decedent. At that hearing, Judge Steinhardt issued a permanent restraining order to protect decedent from Chanh Van Duong. The court then set the next hearing for January 1988.

Prior to the January 1988 hearing, decedent's attorney advised the court of Chanh Van Duong's prior threats of physical violence against the decedent, and requested that security measures be taken. In response to this request, defendant Judge Steinhardt issued a security request to the Arapahoe County Sheriff's Department. The court's request sought one uniformed deputy to be on duty at 1:30 p.m., the scheduled time of the hearing, with a metal detector. However, the shooting occurred sometime after 1:00 p.m., before the scheduled time of the hearing and before the sheriff's deputy arrived. Walk-through metal detectors were not utilized in the courthouse.

Plaintiffs' complaint alleged that defendants had failed to provide effective security for the courthouse and had failed to provide proper procedures, mechanisms, and policies for securing the public from injury on those premises and that such failures were negligent, grossly negligent, and reckless.

Defendants filed motions to dismiss which were treated as motions for summary judgment. These motions were granted.

## I.

Plaintiffs contend that their amended complaint states claims for the deprivation of rights protected by the United States Constitution. Generally asserting a policy of grossly inadequate court security, they first maintain, that they are entitled to recover under 42 U.S.C. § 1983 for violations of the United States Constitution. We disagree.

Summary judgment is proper only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. Once the moving party has met the initial burden of production, the burden shifts to the non-moving party to establish that there is a triable issue of fact. *Civil Service Commission v. Pinder*, 812 P.2d 645 (Colo. 1991).

■ The party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. *Mt. Emmons Mining Co. v. Crested Butte*, 690 P.2d 231 (Colo.1984).

■ To state a claim for relief under 42 U.S.C. § 1983, the claimant need allege only (1) that some person deprived the complainant of a right, privilege, or immunity secured by the Federal Constitution and (2) that such person acted under color of state law. *Uberoi v. University of Colorado*, 713 P.2d 894 (Colo.1986).

■ The determination of whether a complaint states a claim for relief under 42 U.S.C. § 1983 is a question of law. Furthermore, complaints filed under the Civil Rights Act are to be construed liberally. *International Society for Krishna Consciousness, Inc. v. Colorado State Fair & Industrial Exposition Commission*, 673 P.2d 368 (Colo.1983).

Here, the essential facts of the request for security by decedent's attorney and the court, the sheriff's response, the lack of

walk-through metal detectors, and the shooting are not disputed. The question then is defendants' entitlement to judgment as a matter of law.

## A.

Plaintiffs concede that their § 1983 damage claims against the state defendants including James D. Thomas and Judge Steinhardt, who are being sued in their official capacities only, are barred by *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (neither a state nor its officials acting in their official capacities when sued for damages are "persons" under § 1983).

## B.

■ Plaintiffs contend that the county defendants breached their duty arising under the First Amendment to protect the decedent and her daughter in the exercise of their fundamental rights. They argue that the county defendants' failure to provide protection inhibited their right to participate in litigation. We conclude that there was no infringement of plaintiffs' right that was caused by the county defendants' conduct. *See Estate of Gilmore v. Buckley,* 787 F.2d 714 (1st Cir.1986) (where individual found guilty of threatening victim was furloughed and then killed her, allegations by plaintiff of failure to provide safeguards did not make out a violation of the Fourteenth Amendment and a claim under § 1983).

## C.

■ Plaintiffs next contend that, because the shooting occurred in the Arapahoe County Justice Center and before a hearing which allegedly required the presence of decedent and her daughter, there existed a functional custodial relationship between the decedent, her daughter, and defendants and that, thus, they were owed a duty of protection imposed by the Due Process Clause of the Fourteenth Amendment. We do not agree.

■ The language of the Due Process Clause does not require the state to protect the life, liberty, and property of its citizens against invasion by private actors. The clause is phrased as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security. *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

■ Thus, as a general matter, a state's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *DeShaney v. Winnebago County Department of Social Services, supra.*

■ However, when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. Thus, the affirmative duty to protect arises not from the state's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *DeShaney v. Winnebago County Department of Social Services, supra.*

In the due process analysis, it is the state's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which triggers the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means. *DeShaney v. Winnebago County Department of Social Services, supra.*

Here, the relationship between defendants and the decedent and her daughter did not involve a restraint of personal liberty. Although the court had scheduled a hearing on this particular day, that act, in our view, cannot be construed as a taking into custody, the holding of decedent against her will, or other deprivation of liberty. Such conduct is certainly not analogous to incarceration or institutionalization. Thus, under these circumstances, defendants had no constitutional duty to protect them from harm threatened by a pri-

vate citizen. *See DeShaney v. Winnebago County Department of Social Services, supra.*

### D.

▮ Additionally, plaintiffs contend that defendants' conduct deprived them of their constitutionally protected right to a continued familial relationship. Because we have determined that defendants' conduct did not violate plaintiffs' constitutionally protected rights, *see Estate of Gilmore v. Buckley, supra,* summary judgment on plaintiffs' claim for unconstitutional interference with a familial relationship was proper. *See Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981).

Plaintiffs' remaining federal constitutional claims are without merit.

### II.

Plaintiffs also contend that the court erred in finding that victims of violations of rights which are guaranteed by the Colorado Constitution have no right to bring an action for damages. Because we conclude on other grounds that summary judgment on these claims was proper, we do not address this contention.

▮ Here, plaintiffs allege violations of their rights pursuant to Colo. Const. art. II, § 3 (right of enjoying life and liberty), § 6 (speedy remedy for injury and access to courts), § 10 (freedom of speech), § 24 (right to assemble and to petition government), § 25 (due process), and § 29 (equality of sexes).

Even if a damage claim could be asserted as alleged by plaintiffs and would not otherwise be precluded, *see* §§ 24–10–106 and 24–10–118, C.R.S. (1988 Repl.Vol. 10A), we conclude as a matter of law that defendants' conduct constitutes neither a deprivation nor a violation of the rights asserted by plaintiffs.

Plaintiffs do not articulate, nor do we see, how defendants' conduct could constitute a violation of the constitutional right to assemble and petition government or the guarantee of equality of sexes. We also do not view defendants' conduct as depriving these plaintiffs of their right of freedom of speech, or their right of speedy remedy for injury and access to courts, and defendants' conduct does not support a claim under the constitutional provision concerning the right of enjoying life and liberty or guaranteeing due process. *See DeShaney v. Winnebago County Department of Social Services, supra.*

### III.

▮ Plaintiffs further argue that the court erred in dismissing their state common law tort claims. Essentially, they argue that their tort claims come within the waiver of sovereign immunity under § 24–10–106(1)(c), C.R.S. (1988 Repl.Vol. 10A) for dangerous conditions of a public building and that the individual defendants are not entitled to immunity. We disagree.

### A.

Section 24–10–106(1)(c) provides that sovereign immunity is waived by a public entity in an action for injuries resulting from "a dangerous condition of any public building."

"Dangerous condition" is defined to mean:

[A] physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. For the purposes of this subsection (1), a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate. . . .

Section 24–10–103(1), C.R.S. (1988 Repl.Vol. 10A).

▮ However, the dangerous condition exception to the Colorado Governmental

Immunity Act is limited to building or structure defects and cannot be used to maintain an action involving only activities conducted within the building. *Jenks v. Sullivan,* 826 P.2d 825 (Colo.App.1992).

Thus, in *Jenks,* a case involving this same incident in which a bystander was injured by one of the shots fired by Mr. Duong, the court determined that the exception was inapplicable because the plaintiff's wound did not result from the physical condition of the courthouse itself, but from the actions of one who was present in the facility. *Jenks v. Sullivan, supra.*

Thus, we conclude that defendants did not waive sovereign immunity and that the Colorado Governmental Immunity Act bars plaintiffs' state law tort claims.

### B.

Plaintiffs further contend that the court erred in finding that the individual public official defendants are entitled to immunity. We disagree.

Section 24–10–118(2) provides that, except in the circumstances in § 24–10–106(1), a public employee shall be immune from liability in any claim for injury which lies in tort or could lie in tort and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton. Plaintiffs presented no evidence of willful and wanton conduct.

Plaintiffs' remaining contentions are without merit, and because of our resolution of this matter, we do not address defendants' remaining contentions.

Plaintiffs have not shown that the circumstances would afford them a remedy against any of the defendants, and thus, we conclude that defendants are entitled to judgment as a matter of law.

Judgment affirmed.

PLANK and HUME, JJ., concur.