Jennifer JARVIS and Jason Jarvis, By and Through his next friend, Linda JARVIS, Plaintiffs–Appellants,

v.

James DEYOE, individually and in his official capacity, and Town of Parker, Colorado, Defendants–Appellees.

No. 93CA1592.

Colorado Court of Appeals, Div. IV.

Aug. 11, 1994.

Rehearing Denied Sept. 22, 1994.

Certiorari Denied April 3, 1995.

Schoenwald & Lewis, P.C., Forrest W. Lewis, Denver, McBride, Jewett & Drinkwine, L.L.C., Steven E. McBride, Englewood, for plaintiffs-appellants.

Bruno, Bruno & Colin, Louis B. Bruno, Denver, for defendant-appellee James Deyoe.

Unkeless & Bisset, Jennifer Bisset, Denver, for defendant-appellee Town of Parker, Colo.

Opinion by Judge DAVIDSON.

In this action to recover damages for personal injuries, plaintiffs, Jennifer and Jason Jarvis, appeal from the summary judgment in favor of defendants, James Deyoe and the Town of Parker. We affirm.

The following facts were undisputed. At approximately 11:00 p.m., on June 27, 1991, defendant James Deyoe, a police officer employed by the Town of Parker, stopped a vehicle driven by 17–year–old Jennifer Jarvis

and occupied by her 15–year–old brother Jason.

Officer Deyoe concluded that the automobile's temporary license plate had been altered and issued a citation to Jennifer for driving an unregistered vehicle. He· then ordered her not to drive the car and to park it in a nearby parking lot. The officer did not offer plaintiffs a ride to their home. However, several retail businesses in the immediate area were open, including one at which Jennifer was employed, and access to telephones was available.

According to the complaint, plaintiffs obtained a ride with an acquaintance. However, he did not take them all the way home, but dropped them off near an isolated intersection in the early morning hours. As plaintiffs were walking toward their home, three men offered them a ride. After plaintiffs declined the offer, the men physically assaulted them. Jason sustained a broken wrist; Jennifer was kidnapped, driven to a secluded area, and sexually assaulted.

The complaint stated two claims for relief. The first alleged that Deyoe's acts and omissions, under color and authority of state law, deprived plaintiffs of rights and privileges secured by the Fifth and Fourteenth amendments in violation of 42 U.S.C. § 1983 (1988). The second claim alleged that defendant Deyoe's acts and omissions were negligent, willful, and wanton; that he created a foreseeable risk or peril; and that his negligence caused plaintiff's injuries.

In their answer, defendants denied the allegations of civil rights violations, negligence, and willful and wanton conduct. Among other defenses, defendants asserted that plaintiffs' alleged injuries resulted from the acts of third parties over whom defendants had no control and that Deyoe's conduct was protected by qualified immunity.

Subsequently, defendants filed a motion for summary judgment requesting dismissal of the complaint based upon defendant Deyoe's qualified immunity and the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). Plaintiffs filed a response opposing the motion.

Based upon the parties' submissions, the trial court entered summary judgment for defendants on both claims.

## I.

■ Plaintiffs contend that the trial court erred in dismissing their § 1983 claim on the ground of qualified immunity. In support of this contention, they argue that Deyoe's actions violated plaintiffs' clearly established liberty interest in personal security by taking away their means of transportation and leaving them stranded near midnight. We disagree.

■ Qualified immunity protects government officials performing discretionary functions from personal liability unless their actions violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ In evaluating a defense of qualified immunity, a reviewing court must determine whether the right allegedly violated was "clearly established," *i.e.,* whether the nature of the right was so clear that a reasonable officer would understand that the right was violated. *Moody v. Ungerer,* 885 P.2d 200 (Colo.1994); *see also National Camera, Inc. v. Sanchez,* 832 P.2d 960 (Colo.App.1991). Consequently, if, at the time defendant Deyoe stopped plaintiffs, no clearly established law existed that would lead a reasonable police officer to know that his actions violated plaintiffs' federal rights, then Deyoe is protected by qualified immunity. *See Moody v. Ungerer, supra; see also Hilliard v. City & County of Denver,* 930 F.2d 1516 (10th Cir. 1991).

When the incident occurred, the law was clearly established that, in custodial or other settings in which the state has limited individuals' ability to care for themselves, the state has a constitutional obligation to protect them from being harmed by third parties. *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

Here, however, it was undisputed that plaintiffs had been detained for a routine traffic stop; neither plaintiff had been arrest-

ed nor taken into custody. This was a transitory detention which did not restrain plaintiffs, generally, nor prevent them from securing alternate transportation. Thus, a reasonable police officer would not conclude, at least insofar as plaintiffs were not in custody, that he had any further constitutional obligation to assist them. *See Duong v. County of Arapahoe*, 837 P.2d 226 (Colo.App.1992) (The purpose of the due process clause is to protect people from the state, not to insure that the state protected them from each other.).

Plaintiffs point out, however, that the *DeShaney* opinion did not resolve the question as to when, if ever, the state may be liable under constitutional principles for enhancing an individual's risk of injury even in a noncustodial setting. Thus, relying on *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989), in which the court held that a police officer should have known that to leave a woman passenger stranded in a known high crime area would violate her liberty interests, plaintiffs argue that it was clearly established at the time of Deyoe's actions that state actions which enhance the risk of private harm may violate the due process clause. Thus, they argue, a reasonable police officer would have known that, having taken away their transportation, he was constitutionally obligated to assure that plaintiffs had safe alternative transportation home.

We agree with plaintiffs that the *DeShaney* decision did not preclude a finding of constitutional liability for failure to protect a person from harm, even in a noncustodial setting, when the state itself affirmatively created or enhanced the risk of harm. *See Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993) (allegation that state created, or substantially contributed to the creation of a danger, may state a claim for civil rights violation). Nor do we disagree with plaintiff's assertion that, at least in general terms, this principle was well-settled at the time of the incident here. *See Gregory v. City of Rogers*, 974 F.2d 1006 (8th Cir.1992); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir.1992).

However, in evaluating a claim of qualified immunity, "determining whether a right is clearly established requires a specific inqui-

ry, not a general inquiry based on abstract rights." *Moody v. Ungerer, supra* 885 P.2d at 202. Thus, although we have found several cases—decided both before and after the incident here—which held that a police officer in those particular circumstances may have violated due process by creating or enhancing a danger to plaintiff—*see Reed v. Gardner, supra* (leaving behind obviously drunk passenger with access to keys after arresting sober designated driver); *L.W. v. Grubbs, supra* (supervisors at state custodial institution could be liable for leaving woman plaintiff alone with dangerous inmate); *Wood v. Ostrander, supra* (leaving woman passenger stranded in high crime area); *White v. Rochford*, 592 F.2d 381 (7th Cir.1979) (leaving small children alone on highway in cold weather after arrest of adult)—we find no clearly established law, based on facts analogous to those here, which would have led a reasonable police officer to conclude that by his actions, he violated plaintiff's constitutional rights.

Specifically, plaintiffs, although minors, were not small children, nor did Deyoe leave them stranded in a high crime area with no ability to find safe transportation home. To the contrary, it was undisputed that the area in which plaintiffs were stopped was between two shopping centers, one of which contained a movie theater, a bowling alley, and the fast-food restaurant where Jennifer worked, and the other of which contained a grocery store that was open 24 hours a day. Moreover, it was summer, neither plaintiff was sick, incapacitated, or intoxicated, and plaintiffs did not ask for nor want help. When last seen by Deyoe, they were, as they had indicated when they were stopped, headed to the fast-food restaurant where Jennifer worked to get a ride home. It was also undisputed that, just prior to being stopped, Jennifer had spoken on the telephone to her father, who was five minutes away by car.

Thus, although Deyoe affirmatively created the situation that required plaintiffs to find other means home, no precedent existed which would have made it apparent to a reasonable police officer that by allowing plaintiffs to seek their own way home, he was exposing them to such danger as to violate

their due process rights. Hence, we conclude that under these circumstances, a reasonable police officer would not have understood that his actions violated a clearly established constitutional right.

## II.

Plaintiffs also contend that the trial court erred in entering summary judgment on their tort claims on the basis of its conclusion that defendants were immune pursuant to the Colorado Governmental Immunity Act. In support of this contention, they argue that the question whether defendant Deyoe's acts and omissions were willful and wanton was a disputed factual issue for the jury which precluded summary judgment. Again, we perceive no error.

Initially, we note that sovereign immunity issues are neither jury questions nor matters to be determined according to the summary judgment standards of C.R.C.P. 56. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993). Rather, they are to be determined by the court in accordance with C.R.C.P. 12(b)(1). *See* § 24–10–108, C.R.S. (1988 Repl.Vol. 10A). However, if a reviewing court is satisfied that all relevant evidence has been presented to the trial court, it may apply C.R.C.P. 12(b)(1) to the record without a remand. *See Capra v. Tucker,* 857 P.2d 1346 (Colo.App.1993).

Pursuant to the Governmental Immunity Act (the Act), public entities and public employees acting within the scope of their employment are immune from any tort claim that does not fall within one of the six limited areas for which immunity has been waived or unless the act or omission causing the injury was willful and wanton. *See* §§ 24–10–106(1) & 24–10–118(2), C.R.S. (1988 Repl.Vol. 10A). Here, plaintiffs have not asserted that their negligence claim was within any of the six exceptions set forth in § 24–10–106(1).

Although the phrase "willful and wanton" is defined in other statutes, it is not defined by the Act. However, in its recent decision holding that a state patrolman's conduct was not willful and wanton, the supreme court referred to several definitions, all of which involved an element of conscious disregard

for the safety of others. *See Moody v. Ungerer, supra.*

Similarly, in *Duong v. County of Arapahoe, supra,* a division of this court held that the defendants were entitled to immunity because the plaintiffs had presented no evidence that the defendants acted willfully and wantonly in failing to install security measures that could have prevented a man from killing his wife in a courthouse. And, in a case more closely related to the facts before us, this court held that the police officers' refusal to transport a stranded motorist to her destination, which could have prevented a subsequent assault on the woman, was not willful and wanton. *See Whitcomb v. City & County of Denver,* 731 P.2d 749 (Colo.App. 1986).

The circumstances of an incident often constitute the only available evidence on the issue of an actor's state of mind. *See Navratil v. Parker,* 726 F.Supp. 800 (D.Colo.1989) (applying Colorado law, court held that defendant would be liable for willful and wanton conduct only if he acted not only negligently, but either with the intent to injure, or in conscious disregard of the probability that his acts would result in injury to the plaintiff).

Here, it was undisputed that plaintiffs did not ask Deyoe to give them a ride home or to make a call for them. According to plaintiffs' depositions, they did not attempt to telephone their parents or anyone else to request a ride. Instead, they elected to walk to a nearby restaurant where Jennifer was employed and asked her co-workers for a ride. Plaintiffs chose to wait at least an hour in the shopping center until the restaurant closed and then rode part way home with one of Jennifer's co-workers.

In his written report after the incident and in his affidavit, Deyoe stated that he told plaintiffs they would need to find a ride and that, when he left them in the shopping center, there were businesses open and telephones available. Further, in his affidavit and deposition, he stated that before he left the scene he saw plaintiffs walking toward the restaurant—which was still open—where Jennifer had said she was employed and

where she had indicated she would seek a ride.

Under these circumstances, the record supports the trial court's determination that, as a matter of law, Deyoe's actions did not approach the level of culpable conduct required to abrogate the immunity conferred by § 24–10–118(2) because the actions were not willful and wanton. *See Navratil v. Parker, supra; Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra; Cline v. Rabson,* 862 P.2d 1035 (Colo.App.1993) (factual disputes concerning immunity issues are for the court alone, and not a jury, to determine).

Based upon our resolution of these contentions, we consider it unnecessary to address plaintiffs' other arguments.

Judgment affirmed.

HUME and BRIGGS, JJ., concur.