Randy J. HENDERSON; Mary L. Henderson; Amanda Henderson, by her mother and next friend Mary L. Henderson; Sherrie Henderson, by her mother and next friend Mary L. Henderson; and Melissa Henderson–Baumgartner, Plaintiffs–Appellants,

v.

Roy ROMER, Governor of the State of Colorado, individually and in his official capacity; Aristedes Zavaras, Director of the Colorado State Department of Corrections in his official capacity; Frank Gunther, in his individual capacity; William Price, Superintendent of the Arkansas Valley Correctional Facility, State Department of Corrections, in his official capacity and individually; Ron Wager, in his official capacity and individually; the State of Colorado; and the Colorado State Department of Corrections, Defendants–Appellees.

No. 94CA0454.

Colorado Court of Appeals, Div. III.

June 1, 1995.

Rehearing Denied July 20, 1995.

Certiorari Granted Feb. 20, 1996.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1994 Cum.Supp.).

McDivitt Law Firm, P.C., Michael W. McDivitt, Colorado Springs, for plaintiffs-appellants.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., George S. Meyer, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge HUME.

Plaintiffs, Randy J. Henderson, Mary L. Henderson, Amanda Henderson, Sherrie Henderson, and Melissa Henderson–Baumgartner, appeal the trial court's dismissal of their state and federal claims against defendants, Roy Romer, Governor of the State of Colorado, individually and in his official capacity; Aristedes Zavaras, Director of the Colorado Department of Corrections, in his official capacity; Frank Gunther, individually; William Price, Superintendent of the Arkansas Valley Correctional Facility, individually and in his official capacity; Ron Wager, individually and in his official capacity; the State of Colorado; and the Colorado Department of Corrections (DOC). We affirm.

Mary Henderson, a DOC housing technician employed at the Arkansas Valley facility, was taken hostage and assaulted by an inmate. Randy Henderson, Mary's husband, and the other plaintiffs, their children, learned about the attack from the news media.

Plaintiffs' initial complaint purported to assert three tort claims under state law against all defendants except Gunther. First, Randy and the children sought damages for their own "mental, emotional, and physical injuries, stress, distress, and trauma" allegedly caused by defendants' willful, wanton, reckless, and grossly negligent disregard of their rights and safety by intentionally and recklessly placing Mary in a dangerous position at the facility.

In the second claim, Randy and the children asserted that defendants had acted heedlessly and recklessly in failing to notify them privately that Mary had been assaulted and taken as a hostage before disseminating such information to the news media, and they sought damages for their resulting trauma and emotional suffering.

The third claim sought similar damages from all defendants except Gunther for conduct asserted in the first two claims, based upon a theory of *respondeat superior*.

The fourth and fifth claims in the initial complaint also sought damages pursuant to 42 U.S.C. § 1983 (1988) for defendants' willful, wanton, and reckless deprivation, under color of state law, of rights plaintiffs asserted to be guaranteed to them by the constitution and laws of the United States.

Defendants filed a motion to dismiss the complaint for failure to state claims upon which relief could be granted. The motion to dismiss the § 1983 claims asserted that the state, its agencies, and its officers sued in their official capacities are not "persons" subject to suit under § 1983, and that the complaint was so broadly framed as to preclude a

cogent answer to any claim that might be asserted therein.

The trial court dismissed the tort claims asserted under state law, but granted plaintiffs time to amend the § 1983 claims.

Thereafter, plaintiffs amended the complaint to assert the § 1983 claims only against Romer, Gunther, Price, and Wager individually, and to eliminate any such claims against the state, DOC, or Zavaras. The amended complaint asserted that all of the defendants had acted with reckless disregard or deliberate indifference to a risk of danger to plaintiffs that had been created by the acts and omissions of defendants, thus depriving plaintiffs of their right to be free of injury as guaranteed by unspecified constitutional provisions and laws of the United States. The only law expressly claimed in the amended complaint to have been violated is 42 U.S.C. § 1983.

Defendants' renewed motion to dismiss the amended complaint for failure to state a claim was thereafter granted by the trial court. Plaintiffs appeal both orders of dismissal.

## I.

Plaintiffs first contend that the trial court erred in determining that the original complaint does not assert claims upon which relief can be granted under state law. We perceive no error.

■ In evaluating a motion to dismiss for failure to state a claim, the material allegations in the complaint are deemed admitted. A trial court should grant the motion only if it appears that the plaintiff would not be entitled to any relief under the facts pleaded. *Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972). Upon review, the appellate court is in the same position as the trial court. *McDonald v. Lakewood Country Club*, 170 Colo. 355, 461 P.2d 437 (1969).

■ Randy and the children assert that defendants acted in reckless disregard of their safety, a tort first recognized in *Fanstiel v. Wright*, 122 Colo. 451, 222 P.2d 1001 (1950). They argue that the complaint states facts that, if assumed to be true, demonstrate that defendants acted recklessly and, thus, the trial court should not have dismissed their tort claims.

■ A person acts in reckless disregard of the safety of another if he or she acts or fails to act contrary to a duty recognized under the law, knowing or having reason to know of facts which would lead a reasonable person to realize, not only that the conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make the conduct negligent. Restatement (Second) of Torts § 500 (1965); *Fanstiel v. Wright, supra.*

■ Conduct is reckless for purposes of such a claim only if it involves a readily perceptible danger of death or substantial *physical* harm. Restatement (Second) of Torts § 500 comment a (1965).

■ Once an actor's conduct is determined to be reckless, his or her liability for the harm resulting from such behavior is determined by the same rules that determine the liability of a negligent actor. Restatement (Second) of Torts § 501 comment a (1965).

Thus, a plaintiff must still plead and prove facts demonstrating the existence of the basic elements of duty, breach, proximate cause, and damages in order to state a claim upon which relief can be granted.

■ Duty is an obligation to conform to a legal standard of conduct that is reasonable in light of an apparent risk. *Black's Law Dictionary* 505 (rev. 6th ed. 1990).

Here, even if we assume the truth of plaintiffs' allegations concerning defendants' reckless behavior, the complaint contains no facts to establish that defendants owed a duty to Mary Henderson's family to protect them from harm or that defendants' conduct created any risk of physical harm to Randy or the children. At best, the original complaint alleges only a risk of emotional and mental injury, rather than physical injury to Randy and the children. In addition, plaintiffs have not cited authority, and we are aware of none, that imposes a legal duty upon an employer to notify a victim's family of an

injury before releasing such information to the news media.

Thus, since the original complaint failed adequately to plead facts demonstrating the existence of elements necessary to establish any breach of duty recognized under state tort law, the trial court did not err in dismissing those claims.

## II.

▪ Plaintiffs next contend that the trial court erred in failing to afford them an opportunity to amend their complaint to assert a claim cognizable under state law. We disagree.

▪ A decision to allow the pleadings to be amended is within the sound discretion of the trial court, and its decision will not be disturbed on appeal unless an abuse of discretion is demonstrated. *K–R Funds, Inc. v. Fox,* 640 P.2d 257 (Colo.App.1981).

▪ Although leave to amend should generally be freely granted pursuant to C.R.C.P. 15(a), the trial court does not abuse its discretion in refusing to permit a futile amendment. *Conrad v. Imatani,* 724 P.2d 89 (Colo. App.1986).

Here, plaintiffs did not request that the trial court grant leave to amend their state law claims either before or after those claims were dismissed. In addition, defendants' duty to plaintiffs and the nature of plaintiffs' injuries were essential elements of their tort claims. Since plaintiffs' factual averments fail to demonstrate that Mary's family members suffered any physical trauma as a direct result of defendants' conduct, or that they were within a zone of risk created by defendants for such bodily injury, the trial court could properly have determined that any attempt to amend the state law claims would be futile. *See Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163 (1978); *Bradshaw v. Nicolay,* 765 P.2d 630 (Colo.App.1988).

Thus, the trial court neither erred nor abused its discretion in not extending an opportunity to plaintiffs to amend their state tort claims.

## III.

Plaintiffs next contend that the trial court erred in dismissing the amended complaint because it failed to state any claims for which relief could be granted pursuant to 42 U.S.C. § 1983. We perceive no error.

### A.

▪ The first claim for relief, brought by Mary Henderson, asserts that Romer, Gunther, and Price acted with reckless disregard and/or deliberate indifference to the effects that their budgetary decisions and allocations of resources would have on her physical safety. In addition, she alleges that Gunther, Price, and her supervisor, Wager, deliberately ignored prison employees' communications to them about a rumored impending escape attempt, despite their knowledge that such an incident could place Mary, as well as other employees, at risk of physical harm.

The trial court granted defendants' motion to dismiss after characterizing the complaint against the governor, director, and superintendent as one for simple negligence and finding that they neither owed a duty to plaintiffs to appropriate funds to the prison in any particular manner nor directly controlled the allocation of such funds. In addition, the court determined that, because there is no constitutional right protecting a victim from private acts of violence committed by third parties other than the defendants, the complaint failed to state any claim for which relief could be granted pursuant to § 1983.

▪ To state a claim for relief under § 1983, a complaint must allege that some person deprived the complainant of a right, privilege, or immunity established by the constitution or laws of the United States and that, in so doing, such person acted under color of state law. *Uberoi v. University of Colorado,* 713 P.2d 894 (Colo.1986).

▪ The determination of whether a complaint states a claim for relief under § 1983 is a question of law. *Duong v. County of Arapahoe,* 837 P.2d 226 (Colo.App. 1992). When a complaint fails to allege a deprivation or violation of a federally protected right, a claim brought pursuant to § 1983

must be dismissed. *Garcia v. Wyckoff,* 615 F.Supp. 217 (D.Colo.1985).

As a general rule, members of the public have no constitutional right to sue persons who fail to protect them against harm inflicted by third parties. Thus, a state's failure to protect an individual against private violence does not constitute a violation of the due process clause. *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

However, if a state has assumed a custodial relationship over a person, a court may impose liability under a due process analysis, premised on an abuse of a duty imposed by the assumption of custody and restriction of individual freedom. It is the affirmative act of restraining an individual's freedom to act independently, under color of state law, through incarceration, institutionalization, or some other restraint of personal liberty, which triggers the protection of the federal due process clause, rather than a failure to act to protect that person's liberty interests against harm inflicted by others. *Duong v. County of Arapahoe, supra.*

In addition, in *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the court ruled that a municipality's failure to train or warn its employees about known work hazards, which allegedly caused the death of an employee, did not violate the due process clause. The mere fact that the city or its officials acted with "deliberate indifference" did not satisfy the obligation to allege a constitutional violation for purposes of § 1983. The court further held that decisions concerning the allocation of public resources to governmental programs were better left to elective representatives than assumed by courts.

Relying primarily upon *L.W. v. Grubbs,* 974 F.2d 119 (9th Cir.1992) and *Wood v. Ostrander,* 851 F.2d 1212 (9th Cir.1988), plaintiff argues that her claim for relief was not one for mere negligence, but was, instead, adequately pled to conform to a "danger creation" theory of § 1983 liability.

However, in our view, the "danger creation" exception to the *DeShaney* "special custodial relationship" requirement should not be extended so as to apply § 1983 to claims based on state or common law negligence. *See Duong v. County of Arapahoe, supra* (an affirmative duty to protect a private person does not arise from the state's knowledge of the individual's predicament or from its expression of intent to help, but from a limitation which it has imposed on his or her freedom to act independently); *Estate of Gilmore v. Buckley,* 787 F.2d 714 (1st Cir.1986) (a "special relationship" exists only when the state imposes constraints on private action); *Walker v. Rowe,* 791 F.2d 507 (7th Cir.1986) (the state has no duty to ensure safe working conditions for prison guards voluntarily employed); *Hilliard v. Denver,* 930 F.2d 1516 (10th Cir.1991) (there is no clearly established constitutional right to personal security when there is no element of state-imposed confinement or custody). *See also* 1 M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 3.3 (2d ed. 1991) (Noting distinction between action and inaction by persons acting under color of state law).

In the wake of *DeShaney, supra,* the majority of courts considering the issue have concluded that absent a "special custodial relationship" between a claimant and a defendant, a § 1983 claim based upon an asserted violation of liberty guaranteed by the due process clause must aver affirmative governmental action that either causes the claimant's injuries or enhances his or her position of danger. In several jurisdictions, claims based upon governmental inaction or failure to act to prevent injuries caused by other means have been held to be claims based upon simple negligence that are not cognizable under § 1983. *See Monahan v. Dorchester Counseling Center, Inc.,* 961 F.2d 987 (1st Cir.1992); *D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364 (3d Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *Walton v. Alexander,* 44 F.3d 1297 (5th Cir. 1995); *de Jesus Benavides v. Santos,* 883 F.2d 385 (5th Cir.1989); *Nobles v. Brown,* 985 F.2d 235 (6th Cir.1992); *Losinski v. County of Trempealeau,* 946 F.2d 544 (7th Cir.1991); *Gregory v. City of Rogers,* 974

F.2d 1006 (8th Cir.1992); *Bryson v. City of Edmond*, 905 F.2d 1386 (10th Cir.1990).

Our opinion in *Jarvis v. Deyoe*, 892 P.2d 398 (Colo.App.1994) is consistent with this view. In that case a city police officer stopped an automobile for displaying improper temporary registration plates and ordered that it not be driven without proper license plates. The teenaged driver and her brother were left stranded by the officer's action and were assaulted while trying to "hitch a ride" home. There, the complaint alleged affirmative acts committed by the officer which created or enhanced the danger faced by the vehicle's occupants that ultimately resulted in the injuries suffered. Therefore, we ruled that the complaint articulated a § 1983 claim.

Here, unlike *Jarvis*, the § 1983 claim is based upon assertions that various state officials failed to take action rather than that they affirmatively acted in a manner that either created or enhanced the position of danger.

We recognize that a few jurisdictions have permitted § 1983 actions based upon an expanded "danger creation" theory as defined in *L.W. v. Grubbs, supra*, and *Wood v. Ostrander, supra*. Nevertheless, we conclude that the trial court did not err in following the general rule and determining that Mary Henderson's complaint failed to state a cognizable claim pursuant to § 1983.

### B.

The second and third claims for relief, brought on behalf of Randy and the children, assert that defendants acted recklessly and/or with deliberate indifference to their constitutional rights to personal integrity because defendants should have known that their reckless disregard for Mary's safety could lead to her family members' distress upon learning about the attack. Plaintiffs also challenge the court's dismissal of these claims.

### 1.

■ Plaintiffs first contend that the trial court erred in dismissing the claims because its order failed specifically to identify the grounds for dismissal. We disagree.

■ Findings of fact and conclusions of law are unnecessary on decisions of motions under C.R.C.P. 12, except those granting involuntary dismissal pursuant to C.R.C.P. 41(b) for failure to prosecute with diligence. C.R.C.P. 52; *Garrow v. Garrow*, 152 Colo. 480, 382 P.2d 809 (1963).

Here, the trial court dismissed plaintiffs' complaint pursuant to C.R.C.P. 12(b)(5) for failure to state a claim. Therefore, it was not required to make specific findings of fact and conclusions of law for the record. *See Leidy's, Inc. v. H2O Engineering, Inc.*, 811 P.2d 38 (Colo.1991).

### 2.

■ Randy and the children also assert that the court erred in implicitly finding that the amended complaint fails to state a claim upon which relief can be granted to them pursuant to § 1983. We perceive no error.

■ A § 1983 claim must be based upon the violation of a claimant's personal rights, and not the rights of someone else. *Dohaish v. Tooley*, 670 F.2d 934 (10th Cir.1982) (a civil rights action does not accrue to a relative). Thus, here, regardless of what happened to Mary, the second and third claims for relief turn upon whether these plaintiffs personally suffered any deprivation of a right possessed by them individually that was conferred or protected by the constitution or laws of the United States.

■ The guarantee of due process is applicable to deliberate and recklessly indifferent actions of government officials that deprive a person of life, liberty, or property. However, a bystander who is not the object of the action that causes the deprivation is unable to assert the kind of deliberate deprivation of his or her rights necessary to state a due process claim under § 1983. *Archuleta v. McShan*, 897 F.2d 495 (10th Cir.1990).

Here, even though plaintiffs assert that defendants acted recklessly, creating a dangerous situation for Mary and derivatively creating a situation under which Randy and the children suffered emotional harm, there is no showing that the officials acted "in conscious disregard of a substantial risk" to

any federally guaranteed rights of the members of Mary's family in making budgetary decisions and resource allocations affecting the prison or in ignoring warnings about a prison escape attempt. *See Medina v. Denver*, 960 F.2d 1493 (10th Cir.1992); *Archuleta v. McShan, supra.*

In addition, plaintiffs have not cited any authority, and we are aware of none, that supports their contention that family members possess a constitutionally protected right to any notice that another family member has suffered an injury or is endangered prior to releasing such information to the news media.

Moreover, although plaintiffs have pleaded that defendants "violated" § 1983, such an averment is insufficient, standing alone, to state a claim of any sort. Section 1983 neither confers substantive rights nor protects anyone against anything. It only provides a remedy to enforce or vindicate rights otherwise created or protected by federal law. *See Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); 1 M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 1.4 (2d ed. 1991).

Thus, the trial court did not err in dismissing plaintiffs' claims pursuant to defendants' C.R.C.P. 12(b)(5) motion. Nor did the trial court err in refusing to offer, on its own motion, a second opportunity to amend the § 1983 claims prior to dismissing them. We are not persuaded, under the facts asserted in plaintiffs' complaint, that any cognizable claim could lie pursuant to § 1983.

The judgments of dismissal are affirmed.

PIERCE,* J., concurs.

TAUBMAN, J., concurs in part and dissents in part.

Judge TAUBMAN, concurring in part and dissenting in part.

I concur with the majority opinion except for that portion which holds that plaintiff Mary Henderson did not adequately state a

claim against defendants Frank Gunther, William Price, and Ron Wager, in their individual capacities, for violation of her rights protected under 42 U.S.C. § 1983 (1988). Whether Mary has stated a claim under 42 U.S.C. § 1983 against these defendants is a close question. Nevertheless, I agree that all the claims should be dismissed except one. In my view, Mary stated a claim by her allegations that these defendants violated her constitutional right to substantive due process by acting intentionally, recklessly, or with deliberate indifference to an impending attack and hostage taking of her.

In reviewing the propriety of an order granting a motion to dismiss, we must accept the allegations of the amended complaint, and reasonable inferences therefrom, as true. *Elliott v. Colorado Department of Corrections*, 865 P.2d 859 (Colo.App.1993).

In the amended complaint, Mary alleged the following:

On or about February 28, 1992, while on duty to distribute aspirin or other personal items to inmates at the correctional facility where she was employed, she was attacked by an inmate at the facility. The inmate took her hostage with the broken shank of a mirror and subsequently threatened her, forced her into an office, locked the door and, for approximately five and one-half hours beat her, tortured her with the mirror shard, cutting her about the neck, face, and hands, and used an electrical cord to shock her repeatedly in an attempt to electrocute her.

The amended complaint further alleged that, upon information and belief, this attack and hostage taking were part of an organized conspiracy by inmates to accomplish an escape from the facility. In addition, on information and belief, Mary and/or other prison employees had notified Wager of evidence of the impending attack and hostage taking threat at least a week prior to its occurrence and requested him to take preventive action. Mary additionally alleged that, upon information and belief, she submitted a memorandum to Wager outlining evidence of the in-

---

* Sitting by assignment of the Chief Justice under provisions of the Colo.Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1994 Cum.Supp.).

mate conspiracy and that this memorandum was distributed to Wager, Gunther, and Price prior to the attack on her.

The amended complaint further alleged that, approximately four days prior to the attack, she spoke with Wager about what steps he had taken in response to her report of the anticipated conspiracy, and Wager replied that he had taken no action. The complaint also alleged that defendants Price and Wager, among others, knew that the inmate who attacked Mary had a psychological rating which indicated he was unreasonably dangerous to house in the facility and the particular housing unit where Mary was employed.

Further, the amended complaint alleged that, in spite of warnings given by Mary, she was still required to perform her job on the day of the attack, without protection or any preventive measures being taken by any defendants on her behalf.

Finally, Mary alleged that by these actions the defendants: (a) intentionally placed her in a situation of danger created by them with reckless indifference and unguarded proximity with an inmate unreasonably dangerous for the facility; (b) that Wager, Price, and Gunther intentionally or recklessly failed to take any action in response to multiple warnings of the impending actions of inmates to protect her; and (c) that these three defendants intentionally placed her in a situation of known danger of their creation with deliberate indifference to that danger after receiving warning of a pending incident.

Mary's first claim for relief, with which we are concerned here, alleged that defendants violated her rights under 42 U.S.C. § 1983 (1988). Those rights, she maintained, included the right to be free from injury resulting from the willful and wanton, reckless, deliberately indifferent, and/or grossly negligent behavior of the defendants acting under the color of state law, and the right not to be placed in a situation of known danger created by the intentional acts or deliberate indifference of the defendants acting under color of state law.

As the majority correctly notes, to state a claim for relief under 42 U.S.C. § 1983, a complaint must allege that some person deprived the complainant of a right, privilege, or immunity established by the constitution or laws of the United States and that, in so doing, such person acted under color of state law. *See Uberoi v. University of Colorado,* 713 P.2d 894 (Colo.1986).

I recognize, as well, that § 1983 claims based upon due process violations are not intended to supplant state tort law. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

In *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court found that the state owed no constitutional duty to protect a child from the violent actions of his father, noting that in a substantive due process analysis, it is the state's affirmative act of restraining the individual's freedom to act on his own behalf through a deprivation of personal liberty that is the factor triggering the protections of the due process clause. Relying upon this language, a number of courts have held that there can be no § 1983 claim brought by an individual who is not in state custody. *See, e.g., Nobles v. Brown,* 985 F.2d 235 (6th Cir.1992).

However, the *DeShaney* court also noted in denying § 1983 liability that, despite the state's awareness of the child's dangerous predicament, the state "played no part in [its] creation, nor did it do anything to render him any more vulnerable to [it]." *DeShaney, supra,* 489 U.S. at 201, 109 S.Ct. at 1006, 103 L.Ed.2d at 262.

Following this language, the court, in *L.W. v. Grubbs,* 974 F.2d 119 (9th Cir.1992), held that a valid § 1983 claim could be stated where state defendants created a dangerous situation for a registered nurse employed at a prison and made her more vulnerable to attack by misrepresenting to her the risks attending her work. In *L.W.,* which is factually very similar to the circumstances presented here, the court held that the plaintiff had stated a claim under § 1983. In that case, the plaintiff was a registered nurse employed by the state of Oregon at a medium security custodial institution for young male offenders. While working with a known violent sex offender, she was assaulted, battered, kidnapped, and raped. There,

as here, the trial court had dismissed the case for failure to state a claim on the ground that only a person in official custody could state a § 1983 claim when injured by a third party.

While the contours of a substantive due process claim have not been clearly delineated by the United States Supreme Court, *see* M. Schwartz & J. Kirklin, *§ 1983 Litigation: Claims, Defenses, and Fees* § 3.3A (1995 Cum.Supp. No. 1), at least four federal circuit courts of appeal have recognized the danger creation exception to *DeShaney* and allowed a § 1983 claim to go forward. *See L.W. v. Grubbs, supra; Reed v. Gardner,* 986 F.2d 1122 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993); *Dwares v. City of New York,* 985 F.2d 94 (2d Cir.1993); *Freeman v. Ferguson,* 911 F.2d 52 (8th Cir.1990). *See also Doe v. Taylor Independent School District,* 15 F.3d 443 (5th Cir.), (en banc) *cert. denied,* —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994) (§ 1983 claim lies for substantive due process violation under "special relationship" exception to *DeShaney* when school official acts with deliberate indifference to students' rights).

Similarly, in *Jarvis v. Deyoe,* 892 P.2d 398 (Colo.App.1994), a division of this court held that a post-*DeShaney* § 1983 claim could lie for failure to protect a person from harm, even in a noncustodial setting, when the state itself affirmatively created or enhanced the risk of harm.

*Jarvis* did not rely on the distinction between action and inaction by persons acting under color of state law discussed by the majority. Rather, it focused on the language in *DeShaney* suggesting that a § 1983 claim might exist if the state played a part in creating a dangerous situation or rendering an individual in a dangerous predicament more vulnerable. While the majority correctly notes that some courts have limited post-*DeShaney* § 1983 claims to instances of governmental action, in my view, it is both unnecessary and semantically unsound to draw this distinction.

In this regard, *Jarvis* is a case in point. While the majority suggests that there the police officer acted affirmatively in ordering the teenage driver not to drive her car without proper license plates, it could just as

easily be said that the gravamen of the *Jarvis* complaint was the officer's *inaction* in not offering plaintiffs a ride to their home or another safe location.

Here, while one may assert that the complaint rests on allegations that the defendants failed to act to protect Mary, it might also be characterized as asserting that the defendants acted affirmatively by requiring her to go to work as usual on the morning she was taken hostage.

Thus, it is more appropriate to focus on the nature of the defendants' alleged conduct, i.e., did they create a dangerous situation or render plaintiffs more vulnerable, rather than focus on the semantic linchpin of action versus inaction. In the area of preliminary injunctions, I note that a similar dichotomy between mandatory and prohibitory injunctions has not always proved viable. *See generally* C. Wright & A. Miller, *Federal Practice & Procedure.* Civil § 2942.

Further, in my view, *Duong v. County of Arapahoe,* 837 P.2d 226 (Colo.App.1992), relied upon by the majority, is distinguishable. There, the court did not expressly consider the danger creation exception to *DeShaney.* Further, in *Duong,* there was no allegation that the defendants played any part in the creation of the dangers to the decedent or that they did anything to render her more vulnerable to attack; to the contrary, some of the defendants had endeavored, albeit inadequately, to protect her.

Here, by contrast, Mary has expressly alleged that defendants Wager, Price, and Gunther were specifically warned about the impending attack and hostage taking attempt and rendered her more vulnerable by taking no action to protect her.

Furthermore, the amended complaint alleges that these defendants acted intentionally, recklessly, and with deliberate indifference to the dangers Mary faced. As the United States Court of Appeals for the Tenth Circuit has noted: "Practically every court that has considered the issue has concluded that reckless intent may violate § 1983." *Medina v. City & County of Denver,* 960 F.2d 1493, 1496 (10th Cir.1992) (collecting cases).

Additionally, *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117

L.Ed.2d 261 (1992) does not require a different result. There, the Supreme Court ruled that a municipality's failure to train or warn its employees about known work hazards which allegedly caused the death of an employee did not violate the due process clause. The court was concerned with a claim that the city deprived plaintiff of life and liberty by failing to provide a reasonably safe work environment. In my view, *Collins* is distinguishable. Here, as in *L.W. v. Grubbs, supra*, the defendants took affirmative steps to place the injured plaintiff at significant risk, knew of the risks, and made her more vulnerable to them.

Under these circumstances, I conclude that Mary Henderson has stated a claim under 42 U.S.C. § 1983 against defendants Wager, Price, and Gunther, and accordingly, I would allow that claim to proceed. In so doing, however, I would note that I express no opinion on whether defendants' actions are protected under the more stringent qualified immunity test. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (defendants not held liable unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known); *Jarvis v. Deyoe, supra*.