**Elizabeth K. NOBLES, Plaintiff-Appellant,**

v.

**Robert BROWN, Jr., Director, Michigan Department of Corrections, et al., Defendants-Appellees.**

No. 92–1409.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 19, 1992.

Decided Dec. 9, 1992 *.

Ronald W. Chapman (briefed), Lori T. Williams (argued), Chapman & Associates, Troy, MI, for plaintiff-appellant.

Leonard J. Malinowski (argued and briefed), Office of the Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellees.

Before: NELSON and BOGGS, Circuit Judges; and ROSENN, Senior Circuit Judge.**

DAVID A. NELSON, Circuit Judge.

This is an action brought against various Michigan prison officials under 42 U.S.C. § 1983 by a prison guard who was taken captive and raped by a prisoner. The issue presented on appeal is whether the defendant officials could be found to have violated the prohibition imposed by the Fourteenth Amendment against a state's depriving any person of liberty without due process of law. The district court resolved this issue in favor of the defendants, holding as a matter of law that the plaintiff could not show a breach of the Due Process Clause. We agree, and we shall affirm the dismissal of the plaintiff's action.

I

The plaintiff, Elizabeth K. Nobles, was employed as a corrections officer at the Huron Valley Correctional Facility, a state prison located in Ypsilanti, Michigan. While working there at around 8 o'clock in the morning on May 28, 1990, Mrs. Nobles approached the cell of a prisoner who had called out to her. As she did so, a prisoner in a nearby cell unexpectedly opened his cell door, which was supposed to have been double-locked, and pulled Mrs. Nobles inside.

The prisoner, a man named Paul Newson, was armed with a weapon fashioned from a piece of metal he apparently had broken from a defective radiator in his cell. Prisoner Newson was known to be dangerous, and he had taken another female cor-

---

* This decision was originally issued as an "unpublished decision" filed on December 9, 1992. On January 27, 1993, the court designated the opinion as one recommended for full-text publication.

** The Honorable Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

rections officer hostage less than five months earlier. There are factual questions as to whether Mr. Newson should have been kept in the Huron Valley facility at all and whether he should have been assigned to the particular cell he was in.

Once Mrs. Nobles had been pulled inside the cell, Newson barricaded the door and covered the windows with bedding so that no one could see inside. He kept Mrs. Nobles captive in the cell for about four hours.

During this period defendant Josehens Silva Goncalves, an assistant deputy warden, negotiated with Newson in an effort to secure Mrs. Nobles' safe release. Resolving all material factual questions in favor of the plaintiff, as the procedural posture of the case requires us to do for purposes of this appeal, we take it as given that the negotiations ought to have been conducted by someone other than Warden Goncalves; that a state police hostage team which was planning to take control of the scene at noon if the situation was not resolved before that time ought to have taken over earlier; that Warden Goncalves used a "dynamic inactivity" negotiating technique that was not appropriate under the circumstances with which he was confronted; and that it was during the "dynamic inactivity" phase of the negotiations that Newson committed the rape.

Mrs. Nobles filed lawsuits in both the state court of claims and the United States District Court for the Eastern District of Michigan. We are told that she was unsuccessful in her court of claims suit. The federal action survived an early motion for dismissal under Rule 12(b), Fed.R.Civ.P., and the district court declined initially to grant summary judgment to the defendants. A new motion for dismissal or summary judgment was filed after extensive pre-trial discovery had been completed, and the district court (Hackett, J.) ultimately concluded that the plaintiff could not show a violation of the Due Process Clause. The court granted the defendants' dispositive motion, and this appeal followed.

## II

The issue before us is not whether the defendants could be shown to have violated any statutory, regulatory, or common law duty the breach of which could or should have subjected them to liability under the law of Michigan. Some of the defendants may have been negligent, but the Fourteenth Amendment was not adopted to constitutionalize the law of negligence for state employees. See *Daniels v. Williams*, 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986), where the Supreme Court rejected "the notion that all common-law duties owed by government actors were somehow constitutionalized by the Fourteenth Amendment."

What the Fourteenth Amendment says, rather, is that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law...." "Historically," as *Daniels v. Williams* reminds us, "this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Id.* at 331, 106 S.Ct. at 665 (emphasis in original). See, *e.g.*, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). However derelict in their duties the defendant prison officials may have been here, it cannot be said that they *deliberately* decided to have plaintiff Nobles taken captive and raped, in the way that the defendant in *Rochin*, for example, deliberately decided to have the plaintiff prisoner's stomach pumped.

In *Hayes v. Vessey*, 777 F.2d 1149 (6th Cir.1985), which involved a tragedy that was factually similar to the one with which we are concerned in the case at bar, the defendants were accused of "callously ignoring prison security rules" and "defeating automatic locking mechanisms which led to the unauthorized entry of the rapist." *Id.* at 1151. The plaintiff in *Hayes v. Vessey* sought to assert a due process claim based on the commission by the defendants of official acts of a sort that "may not take place no matter what procedural protections accompany them" or that "shock the conscience of the court." *Id.* at 1152 (citations omitted). Affirming a summary judgment entered against the plaintiff on this claim, we declared that "the injury must be the result of some intention-

al governmental act" if the claim is to be allowed. *Id.*, citing *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir.1985) (*en banc*) ("purposeful infliction of injury" required). The defendants in the case at bar were no more guilty of an "intentional" or "purposeful" deprivation of liberty than were the defendants in *Hayes v. Vessey*.

Plaintiff Nobles earnestly contends that the conduct of the defendants in this case "amounts to deliberate indifference which shocks the conscience." A similar argument was advanced in *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The defendants in *DeShaney* were local government officials who had returned a four-year-old boy to the custody of his father after the child was so severely abused by his father that he had to be placed in the temporary custody of a hospital. The defendants knew that the abuse continued thereafter, but they did nothing about it. The boy finally sustained permanent brain damage in one of the beatings administered by the father. It was argued in the ensuing § 1983 action that because the government had undertaken to protect the child, its failure to do so in a reasonably competent fashion "was an abuse of power that so 'shocks the conscience,' *Rochin v. California*, 342 U.S. 165, 172 [72 S.Ct. 205, 209, 96 L.Ed. 183] (1952), as to constitute a substantive due process violation." *DeShaney*, 489 U.S. at 197, 109 S.Ct. at 1004.

"We reject this argument," the Supreme Court flatly declared. *Id.* at 198, 109 S.Ct. at 1004. When a state takes a person into its custody and holds him there against his will, said the Court, the Constitution requires the state to assume some responsibility for his safety. *Id.* at 199–200, 109 S.Ct. at 1005–06. This duty, the Court continued, "arises not from the State's knowledge of the individual's predicament ... but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200, 109 S.Ct. at 1006. No such duty arises as a constitutional matter, the Court held, when the injured individual is not in state custody. Generally speaking, in other words, "a State's failure to

protect an individual against private violence simply does not constitute a violation of the Due Process Clause."

After stressing that the harm suffered by the child "was inflicted not by the State of Wisconsin, but by [the child's] father," the *DeShaney* Court concluded its opinion with this observation:

"The people of Wisconsin may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment." *Id.* at 203, 109 S.Ct. at 1007.

By the same token, of course, the people of Michigan are free to create a system under which the state and its officials would be subjected to liability for failure to accord prison guards reasonable protection against harms inflicted by dangerous prisoners. This court, however, is not free to create such a system by turning the Due Process Clause into a Michigan Tort Claims Act.

Although the logic of *DeShaney* clearly governs the instant case, in our view, there are some obvious factual distinctions between that case and this one. While the State of Wisconsin was aware of the dangers faced by the child in *DeShaney*, for example, "it played no part in their creation...." *Id.* at 201, 109 S.Ct. at 1006. In the case at bar, by contrast, the defendant officials are charged with having played a part in creating the dangers faced by the plaintiff.

The same thing was true, however, in *Hayes v. Vessey*, where we affirmed a summary judgment against the plaintiff on her due process claim. The same thing was also true in *Walker v. Rowe*, 791 F.2d 507 (7th Cir.), *cert. denied*, 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986), where three prison guards had been killed, and others had been injured, by rioting inmates. The defendants in that case were claimed

to be personally responsible for the fact that the prison's metal detectors were not operational, the fact that proper shakedowns had not been conducted to find weapons that inmates were known to be manufacturing in the metal shop, the fact that inmates had not been locked in their cells when they should have been, and the fact that shotguns had not immediately been issued to the prison's tactical squad when the riot began. Notwithstanding that the acts and omissions of the defendant officials arguably increased the danger to which the guards were exposed, and notwithstanding that the court was prepared to assume that the defendants were "grossly negligent," the court concluded that the state could not be shown to have deprived any person of life, liberty or property without due process of law.

"The defendants," said the court, "did not kill or injure the guards; prisoners did, and this makes all the difference." *Id.* at 509. Holding that "the due process clause does not assure safe working conditions for public employees," the court reversed a judgment entered on a jury verdict in favor of the plaintiffs. *Cf. McClary v. O'Hare,* 786 F.2d 83 (2d Cir.1986), which the *Walker* court characterized as holding that "even 'deliberate' exposure of public employees to 'high risk' does not violate the constitution because it is not an abuse of government power." *Walker,* 791 F.2d at 511, n. 2. See also *de Jesus Benavides v. Santos,* 883 F.2d 385 (5th Cir.1989), applying the logic of *DeShaney* to reject a § 1983 claim by a prison guard injured during an inmate's escape attempt.

1. Mr. Newson differs, in this respect, from the inmate (Charles Hartman) who murdered the daughter of the plaintiffs in *Nishiyama v. Dickson Co. Tenn.,* 814 F.2d 277 (6th Cir.1987) (*en banc*). Pursuant to an established practice of the county sheriff's department, the *Nishiyama* defendants had "authorized Hartman to use and have sole control over [a marked] patrol car...." *Id.* at 280. The *Nishiyama* defendants knew that Hartman was using the patrol car to stop motorists, and they did nothing about it. "Because of this practice of the sheriff's department, Hartman was able to use the apparent authority of the patrol car to direct Kathy Nishiyama to stop several blocks from her home and thus become his victim." *Id.* at 281. Mr. Newson, by contrast, had no official authority of any kind, actual or apparent.

The test we applied to the sheriff and deputy sheriff who authorized Hartman to use the pa-

In the instant case, again, it was not the defendants who took Mrs. Nobles captive and assaulted her; it was prisoner Paul Newson. Mr. Newson was not acting under color of any state "statute, ordinance, regulation, custom, or usage," see 42 U.S.C. § 1983,[1] and the outrage suffered by Mrs. Nobles is simply not compensable in a federal civil rights action. The judgment dismissing Mrs. Nobles' complaint is AFFIRMED, without prejudice to any action that the plaintiff may have under state law.

trol car in *Nishiyama* was "reckless indifference" to a known risk of such magnitude that it was "highly probable" that harm would follow. *Id.* at 282–83. This test—if it ever applied to anyone other than state actors responsible for clothing an inmate with the authority of the state—may not have survived the Supreme Court's subsequent decision in *DeShaney.* If the test did survive, the fully developed record that is before us in the instant case shows that the plaintiff cannot meet it. The defendants in this case may have been negligent, as we have said, but their conduct comes nowhere close to the wanton misconduct with which the *Nishiyama* defendants were charged.